IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUBREY DALE FONTENOT,<br>TDCJ #1305168, | §<br>§<br>§ | |
| Petitioner, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. H-07-3426 |
| NATHANIEL QUARTERMAN, Director,<br>Texas Department of Criminal Justice -<br>Correctional Institutions Division, | §<br>§<br>§<br>§ | |
| Respondent. | §<br>§ | |

## MEMORANDUM AND ORDER

The petitioner, Aubrey Dale Fontenot, is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Fontenot has filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction. The respondent has answered with a motion for summary judgment, arguing that Fontenot is not entitled to relief. (Doc. # 7). Fontenot has filed a response. (Doc. # 8). After considering all of the pleadings, the records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons that follow.

## I.      BACKGROUND AND PROCEDURAL HISTORY

A state grand jury returned an indictment against Fontenot in cause number 1020840, charging him with aggravated robbery with a deadly weapon, namely, a firearm.  In particular, Fontenot was charged with robbing a local Subway restaurant while using a firearm that was wrapped in a blue towel.  The State enhanced the indictment for purposes

of punishment with allegations that Fontenot had at least one prior felony conviction for possession of a controlled substance.

Fontenot's case was tried before a jury in the 230th District Court of Harris County, Texas.  At the start of trial on May 3, 2005, the prosecutor gave notice that the complainant identified in the indictment, Subway employee Ivan Neri, was unavailable to testify that day. The prosecutor stated, however, that he hoped to present Neri as a witness on the following day, before the close of the guilt/innocence phase of the proceeding.  In the meantime, the State presented testimony about the robbery and Fontenot's identity as the perpetrator from another Subway employee, Socorro Ramirez.  Ramirez testified that she was present during the robbery, which occurred on September 15, 2004.  Ramirez identified Fontenot in court as the person who committed the robbery, which was captured on surveillance videotape. Although Ramirez believed that Fontenot had a gun by the way he pointed a concealed object at the two employees (both Neri and Ramirez), she stated that she did not actually see a firearm because Fontenot's hand was wrapped with a blue towel.

In addition to the testimony from Ramirez, the prosecutor also presented testimony from the police officers who responded to the 911 call for help from the distressed employees and the detective who investigated the robbery.  Deputy James Shannon testified that Fontenot was identified as a suspect following a traffic stop in the same area of town where the robbery occurred.  At that time, Fontenot was driving a vehicle that matched a description of the car driven by the perpetrator and he was wearing the same clothing as the perpetrator depicted on the surveillance videotape of the robbery.  According to Detective Godfrey Eta,

2

both Neri and Ramirez identified Fontenot as the perpetrator after reviewing a photographic array.  When Fontenot was arrested, a blue towel just like the one used by the perpetrator was recovered from Fontenot's car.  The prosecutor was unable to locate Neri before the close of the State's case and rested on May 4, 2005, without presenting any testimony from this witness.

When the prosecutor rested without presenting Neri as a witness, Fontenot's defense counsel immediately moved for an instructed verdict on the grounds that, without Neri's testimony, Fontenot was unable to confront or cross-examine this witness about whether he was placed in fear because a deadly weapon was used to commit the offense, among other things.  The trial court disagreed that there was insufficient admissible evidence to show that the complainant was in fear during the robbery, but granted the motion for an instructed verdict on the issue of whether Fontenot used a deadly weapon during the incident.  Because a deadly weapon finding is a required element of aggravated robbery under Texas law,[1] the State was not allowed to present this charge to the jury.  The jury ultimately found Fontenot guilty of the lesser included felony offense of robbery.

Shortly after the close of the guilt/innocence phase of the proceeding, the complainant, Ivan Neri, arrived at the courthouse.  Neri testified during the punishment phase of the proceeding, explaining that he was inadvertently unavailable for the guilt/innocence phase

---

[1]    A person commits the offense of robbery if, in the course of committing theft, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  *See* TEX. PENAL CODE § 29.02(a)(2).  A person commits aggravated robbery if he commits robbery and he causes serious bodily injury to another or he uses or exhibits a deadly weapon.  *See id*. at § 29.03(a)(1)-(2).

of the proceeding because he had been traveling out of the country and was unaware of the re-scheduled trial date.  Neri identified Fontenot as the perpetrator and testified that, although he did not see a firearm, he believed that Fontenot had a gun in his hand that was concealed during the offense at the Subway on September 15, 2004.  The State presented evidence that Fontenot robbed another Subway on September 20, 2004, during which offense he threatened to kill a family who was there eating dinner.  After Fontenot stipulated that he had at least four prior felony convictions, the jury sentenced him to serve sixty years in prison.

On direct appeal, Fontenot argued that the trial court erred by denying his motion for an instructed verdict to the charge of robbery because there was no evidence that the complainant, Ivan Neri, was threatened and placed in fear of imminent bodily injury or death. The intermediate court of appeals rejected Fontenot's argument after making the following findings of fact based on the evidence at trial:

> In this case, Socorro Ramirez testified that [Fontenot] entered the restaurant where the complainant was employed, pointed his towel-covered hand at her and Neri, and demanded that they open the cash register.  [Fontenot] then took $150 from the cash register.  Ramirez thought [Fontenot] would shoot her; she felt threatened by [Fontenot] and testified that Neri was just as scared as she was.  Viewed in the light most favorable to the verdict, the jury could have found that, by pointing his towel-covered hand at Neri and [Ramirez] and demanding money from the cash register, [Fontenot] threatened and placed Neri in fear of imminent bodily injury or death by conveying an impression that he held a weapon inside the towel and would harm them if they did not comply with his demand.  Thus, the trial court did not err in denying appellant's motion for instructed verdict . . . .

*Fontenot v. State*, No. 14-05-00491-CR (Tex. App. — Houston [14th Dist.] May 16, 2006).

In a second issue, Fontenot complained that he was denied his right to confront and cross-

examine Neri, who did not testify at trial. The court of appeals rejected this claim after finding that Fontenot failed to timely object or preserve such a claim for appellate review. *See id.* After the court of appeals affirmed Fontenot's conviction, the Texas Court of Criminal Appeals refused his petition for discretionary review.

Fontenot challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure. In that application, Fontenot argued that his conviction should be set aside because he was denied effective assistance of counsel at trial. In particular, Fontenot complained that his attorney failed to raise a timely objection on the grounds that hearsay testimony was admitted in violation of his constitutional right to confront and cross-examine the complainant. The state habeas corpus court, which also presided over the trial, entered findings of fact and concluded that Fontenot was not entitled to relief. The Texas Court of Criminal Appeals agreed and denied relief based on findings and conclusions of law made by the trial court. *See Ex parte Fontenot*, No. 68,497-01 (Tex. Crim. App. Oct. 3, 2007).

Fontenot now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his state court conviction. He raises essentially the same claims that he presented in state court, namely, that he was denied effective assistance of counsel at his trial regarding his attorney's failure to object properly under the Confrontation Clause found in the Sixth Amendment to the United States Constitution. The respondent has filed a motion for summary judgment, arguing that Fontenot is not entitled to relief on any of his claims under the governing federal habeas corpus standard of review set forth below.

5

## II.    STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996). Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication. *See* 28 U.S.C. § 2254(b). To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies. If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995). The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements

for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

> (1)     was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2);   *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted), *cert. denied*, 535 U.S. 982 (2002). The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta,"

of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, — U.S. —, —, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Pure questions of fact are governed by § 2254(d)(2). *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).   This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).   The petitioner's claims for relief are examined below under the applicable legal standard.

## III.   DISCUSSION

As referenced above, Fontenot contends that he is entitled to relief because he was denied effective assistance of counsel when his trial attorney failed to raise a timely objection to hearsay testimony in violation of the Confrontation Clause. The state habeas corpus court, which presided over Fontenot's trial and sentencing, rejected these claims on state habeas corpus review. *See Ex parte Fontenot*, No. 68,497-01 at 41-44. Specifically, the state court concluded that Fontenot failed to show "that his counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different." *Id*. at 43-44 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard)).

Presumably, Fontenot contends that the state court's decision to reject his claim was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which establishes the test for ineffective assistance of counsel. To prevail on an ineffective-assistance claim, a habeas petitioner must establish both elements of the *Strickland* test by showing that (1) counsel's representation was deficient, such that it "fell below an objective standard of reasonableness," and (2) that the deficient representation caused prejudice, which requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2002) (reciting the two-

prong *Strickland* test).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."  *Strickland*, 466 U.S. at 687.

To establish deficient performance under the *Strickland* standard, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 543 U.S. 1056 (2005).

Even if defense counsel committed an error, a petitioner must still demonstrate actual prejudice as a result of his counsel's deficient performance.  Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined.  *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)).  A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Fontenot's claims are examined below under the *Strickland* standard.

In two related grounds for relief, Fontenot contends that he was denied his right to confront and cross-examine the complainant listed in the indictment, Ivan Neri, who was unavailable to testify at trial because the State was unable to locate him before the end of its case in chief.  As outlined above, the State relied primarily on another restaurant employee, Socorro Ramirez, who was present when the robbery took place and identified Fontenot as the perpetrator.  Fontenot complains that Ramirez, who testified that both employees felt threatened and were placed in fear as a result of Fontenot's actions, should not have been allowed to testify about Neri's demeanor during the robbery.  Fontenot complains further that the State should not have been allowed to present testimony from Detective Godfrey Eta, who testified that both Ramirez and Neri identified Fontenot as the perpetrator after looking at a photographic array.[2]  Because Neri did not testify at trial, Fontenot complains that his attorney was deficient for failing to preserve for appeal an issue under the Confrontation Clause by objecting to "testimonial hearsay" about Neri's demeanor during the robbery and about Neri's pretrial identification.[3]

---

[2]     Deputies Tim Arfele and Chris Mullins, who responded to the 911 call reporting the robbery, also testified about Neri's description of the perpetrator.  The record shows, however, that this testimony was solicited on cross-examination in an effort to establish doubt about Neri's initial description of the robber as a light-skinned Hispanic man.  *See* Court Reporter's Record, vol. 3, at 38-39, 81-82.  Fontenot, who is a light-skinned black man, does not claim that this evidence was inadmissible or that this testimony about Neri's description violated the Confrontation Clause and he does not challenge his attorney's trial strategy on this issue.

[3]     In his pleadings and his response to the summary judgment motion, Fontenot appears to argue that his attorney could have preserved error by objecting on the grounds that testimony about Neri's demeanor and his out-of-court identification was inadmissible hearsay.  (Doc. # 8, at 4).  This argument does not raise a constitutional issue.  A hearsay objection "does
                                                                              (continued...)

The Confrontation Clause found in the Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.   The right to confrontation bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[4] *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Thus, the Sixth Amendment guarantees a defendant's right to rebut the State's evidence through cross-examination.  *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005) (citing *Webb v. Texas*, 409 U.S. 95 (1972) (per curiam) (citations omitted)).

---

[3](...continued)
> not preserve any constitutional error related to the denial of confrontation and cross-examination of witnesses."  *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *see also Wright v. Quarterman*, 470 F.3d 581, 586-87 & n.6 (5th Cir. 2006) (citations omitted), *cert. denied*, — U.S. —, 127 S. Ct. 2996 (2007).  Accordingly, the Court construes Fontenot's claim as one faulting his attorney for failure to raise a Confrontation Clause objection.

[4]
> In *Crawford*, the Supreme Court did not provide a comprehensive definition of "testimonial," but noted that a testimonial statement "is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact" and "includes statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for later use at trial." *Id.* at 51-52. Later, however, the Supreme Court clarified the difference between "nontestimonial" and testimonial statements that are circumscribed by the Confrontation Clause and *Crawford*. *See Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 2276 (2006) (holding that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" but that statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.").

Subject to several exceptions, Texas law prohibits the admission of hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d); *see also* FED. R. EVID. 801(c). While the admission of testimonial hearsay is barred under the Confrontation Clause, testimony that fits within an exception to the prohibition against hearsay does not run afoul of the Confrontation Clause. *See Coble v. Quarterman*, 496 F.3d 430, 439 (5th Cir. 2007) (citing *Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999) (hearsay evidence does not offend the Confrontation Clause where the evidence falls within a firmly rooted hearsay exception); *White v. Illinois*, 502 U.S. 346, 356 (1992)). The Court examines both objections raised by Fontenot separately below to determine if the testimony constituted inadmissible hearsay of the sort that could violate the Confrontation Clause.

### A.     Testimony from Socorro Ramirez

Fontenot contends that testimony given by Subway employee Socorro Ramirez about Neri's demeanor during the robbery was inadmissible hearsay and that his attorney was deficient for failing to object. Fontenot is mistaken. As the state habeas corpus court correctly noted, Ramirez testified about Neri's emotional state during the robbery, but she did not testify about any out-of-court statements by Neri. *See Ex parte Fontenot*, No. 68,497-01 at 41. Because Ramirez was present at the robbery and witnessed the events first hand, her observation about Neri's reaction constitutes a present sense impression that fits within

an exception to the prohibition against hearsay.  *See* TEX. R. EVID. 803(1).[5]  Likewise, her

observation was also relevant to Neri's state of mind.  *See* TEX. R. EVID 803(3).[6]  Because

the testimony given by Ramirez about Neri's demeanor during the robbery fits within a

recognized exception to the rule against hearsay, Fontenot's counsel was not deficient for

failing to object to this testimony.

### B.      Testimony from Detective Godfrey Eta

Detective Godfrey Eta testified that both Ramirez and Neri identified Fontenot as the

perpetrator prior to trial after reviewing a photographic array.  Fontenot complains that

Detective Eta's testimony about Neri's out-of-court identification was inadmissible hearsay.

A statement of identification is not inadmissible hearsay under Texas law provided that the

declarant testifies at trial and is subject to cross-examination.  *See* TEX. R. EVID. 801(e)(1)(c).

Neri ultimately appeared as a witness during the punishment phase of the trial, where he

identified Fontenot as the perpetrator.  *See* Court Reporter's Record, vol. 5, at 30.  Because

Neri did not appear during the guilt/innocence phase of the trial, it appears that Detective

Eta's testimony about Neri's pretrial identification of Fontenot was inadmissible hearsay.

---

[5]      "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," is not excluded by the hearsay rule.  TEX. R. EVID. 803(1).

[6]      Texas law exempts from the hearsay rule testimony about another's existing mental, emotional, or physical condition: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or term of declarant's will."  TEX. R. EVID. 803(3).

Although Detective Eta's testimony about Neri's pretrial identification was admitted without objection, Fontenot's counsel argued that her decision not to object was reasonable under the circumstances.  In an affidavit provided on state habeas corpus review, Fontenot's trial counsel emphasized that she raised a Confrontation Clause objection and made a motion for an instructed verdict on the second day of trial, May 4, 2005, at the moment she became aware that Neri would not be available to testify.  *See Ex parte Fontenot*, No. 68,497-01 at 31-33 (citing to Court Reporter's Record, vol. 4, at 7-9).  As counsel explained, she could not have objected earlier because the prosecutor had asserted that he intended to call Neri as a witness and that every effort was being made to locate him.  *See id*. at 36.  Counsel was aware that, under the Texas Rules of Evidence, the testimony about Neri's out-of-court identification would not be considered inadmissible hearsay under Texas law if Neri testified at trial.  *See id*. (citing TEX. R. EVID. 801(e)(1)(c)).  Counsel explained that she did not make a contemporaneous objection to Neri's pretrial identification of Fontenot as the perpetrator because, at the time the testimony was given, she believed that Neri was going to testify at the trial and that the testimony would therefore fit within the exception found at Texas Rule of Evidence 801(e)(1)(c).  *See id*.  Thus, counsel explained that "[her] decision not to make these objections before [the close of the State's case-in-chief on May 4, 2005] was strategic and based on all information [that was] known at the time."  *Id.*

The state habeas corpus court found that the attorney's affidavit was credible and that the facts alleged therein were true.  *See Ex parte Fontenot*, No. 68,497-01 at 41.  The state habeas corpus court acknowledged that, although Neri was not available to testify on the first

15

day of trial, May 3, 2005, the prosecutor asserted that he anticipated presenting Neri's testimony the following day. *See id.* The State rested the following day, May 4, 2005, without presenting Neri as a witness. *See id.* Under these circumstances, the state habeas corpus court reasoned that Neri's pretrial identification of Fontenot was not inadmissible hearsay under Texas law at the time the testimony was given because there was a reasonable basis to believe that Neri would appear as a witness the following day.[7] *See id.* at 43 (citing TEX. R. EVID. 801(e)(1)(c)). Because defense counsel raised a Confrontation Clause objection as soon as she received notice that Neri would not testify during the State's case-in-chief, the state habeas court found that there was no deficiency on counsel's part for failing to object previously on that basis. *See id.*

The state habeas corpus court's credibility finding about defense counsel's affidavit is entitled to the presumption of correctness found at 28 U.S.C. § 2254(e)(2), and Fontenot has not met his burden to rebut that presumption with clear and convincing evidence.

---

[7]     The record reflects that the prosecutor informed the trial court and defense counsel on the first day of trial, May 3, 2005, that Ivan Neri was not available that day. *See* Court Reporter's Record, vol. 3, at 84. The prosecutor noted, however, that Neri had appeared at a previous trial setting in the case, but that the trial date was re-set because Fontenot had the chicken pox on that occasion. *See id.* The prosecutor advised that an investigator was attempting to locate Neri and that he intended to call Neri as a witness. *See id.* The prosecutor explained that he had been unable to locate Neri for the re-scheduled trial because Neri lived at different residences. *See id.* When the he was unable to locate Neri, the prosecutor informed the trial court of this fact and rested the State's case-in-chief on the morning of May 4, 2005 without presenting any testimony from this witness. Neri's defense counsel objected immediately on the grounds that Fontenot was denied his right to confront and cross-examine Neri. *See* Court Reporter's Record, vol. 4, at 5. Neri arrived at the courthouse at approximately 11:00 on May 4, 2005, in time to testify during the punishment phase. *See* Court Reporter's Record, vol. 5, at 26-41.

16

Likewise, Fontenot does not demonstrate that the state habeas corpus court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.  *See* 28 U.S.C. § 2254(d)(2).

The record, which is summarized above, supports trial counsel's assertion and the state habeas corpus court's conclusion that her failure to object to Neri's out-of-court identification was based on trial strategy in response to events that were beyond her control. *See* Court Reporter's Record, vol. 4, at 5.  Because Fontenot's counsel believed that Neri would appear and testify before the close of the State's case-in-chief, her decision not to raise a contemporaneous objection under the Confrontation Clause was not unreasonable.  Under these circumstances, Fontenot fails to show that his attorney was deficient, as that term is understood under *Strickland*, for failing to object when Detective Eta's testimony about Neri's pretrial identification was given.  *See Wright v. Quarterman*, 470 F.3d 581, 589 (5th Cir. 2006) (rejecting an ineffective-assistance claim for failure to raise a Confrontation Clause objection where it appeared that counsel's decision not to object was based on reasonable trial strategy), *cert. denied*, — U.S. —, 127 S. Ct. 2996 (2007).

Alternatively, even if counsel was deficient, Fontenot does not show that he was prejudiced.  Any violation of the Confrontation Clause is subject to harmless error review, which requires consideration of the following factors: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material

points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

In this instance, the testimony regarding Neri's out-of-court identification was cumulative of properly admitted testimony by the other restaurant employee (Ramirez) who was present when the robbery occurred and who identified Fontenot in court as the perpetrator depicted on the store surveillance tape. Neri, who ultimately arrived in time to testify at the punishment phase of the trial, identified Fontenot as the perpetrator and told the jury that he was very shaken by the ordeal. There was more than ample evidence in the record to establish Fontenot's guilt. Where the evidence of guilt is overwhelming, as it was in this case, Fontenot cannot show that the error was harmful and he cannot demonstrate actual prejudice as the result of a Confrontation Clause violation. *See Wright*, 470 F.3d at 589-90.

Because Fontenot does not demonstrate that his counsel failed to raise a meritorious objection or that the outcome of his trial would have been different, Fontenot fails to establish that he suffered the requisite actual prejudice as the result of his attorney's performance. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)

("Counsel is not required to engage in the filing of futile motions.").  Absent a showing that counsel was deficient, or that he suffered actual prejudice as a result, Fontenot fails to establish a claim for ineffective assistance of counsel in connection with his attorney's alleged failure to raise a timely Confrontation Clause objection.  Fontenot does not otherwise establish that the state court's decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1). Therefore, he is not entitled to federal habeas corpus relief.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282

19

(2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.   Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.   Therefore, a certificate of appealability will not issue.

## V.      CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.        The respondent's motion for summary judgment (Doc. # 7) is **GRANTED**.

2.        The petition for a writ of habeas corpus (Doc. # 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

3.        A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  April 2nd, 2008.

Nancy F. Atlas
United States District Judge